

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT COURT IN VIRGINIA**

KIMBERLY LOWE )
KIMBERLY LOWE FOR CONGRESS, )
)
      Plaintiff )
)
v. )
)
)
ROBERT BRINK, Member of the )
VIRGINIA State Board of Elections, in )
his official capacity, *et al.,* )
)
      Defendant )

Case No. 3:22cv263

---

## CIVIL COMPLAINT WITH INJUNCTIVE RELIEF

It is hereby requested that THIS COURT give the Virginia Department of Elections the power to uphold Virginia election law such that when a party commits fraud and does not follow Virginia election law in the candidate nomination process that the Virginia Department of Elections has the ability to intercede and enforce Virginia Code 24.2-537 specifically stating that any individual becoming party nominee through fraud be removed from ballot access in that race and that candidate be set aside. Injunctive relief is requested such that Kimberly Lowe be given ballot access on the Republican ticket since Kimberly Lowe completed all requirements under State law, however, the party through the party chair did not follow election law and committed 1st and 14th Amendment violations. THIS COURT has jurisdiction, all other avenues of relief have been sought, any restriction which hinders constitutional rights must be under strict scrutiny, and injury to the candidate, Kimberly Lowe is clear, and without relief there is irreparable harm.

## JURISDICTION

Ballot access, undo burdens and restrictions on first amendment rights, and denying the right of an individual to vote is a federally protected right under the First Amendment and thus the Federal Court is the appropriate avenue for relief. Further there are clear 14th Amendment due process violations that led to a 1st Amendment violation. All other methods of relief were tried, there is no other remedy available, and ultimately THIS COURT holds the jurisdiction.

## STANDING

Article III standing is a fundamental jurisdictional requirement that defines and limits a court's power to resolve cases and controversies (*Miller v. Brown*, 462 F.3d 312, 316-21, 4th Cir. 2006; *Emery v. Roanoke City School Board*, 432 F.3d 294, 298, 4th Cir. 2005). Standing requires that a litigant have a personal stake in the outcome of the controversy as a result of having suffered some actual or threatened injury (*Kay v. Austin*, 621 F.2d, 809, 811, 6th Cir. 1980; *Davis v. Passman*, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 60 L.Ed. 2d 846, 1979; *Worth v. Seldin*, 422 U.S. 490, 498-501, 95 S.Ct. 2197, 45 L.Ed. 2d 343, 1975). Accordingly, a litigant must demonstrate: (1) a distinct and palpable injury, (2) a fairly traceable causal connection between the claimed injury and the challenged conduct, (3) a substantial likelihood that the injury is redressable by the relief requested (*Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed 2d 281, 1997; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351, 1992; *Duke Power Co. v. Carolina Envtl. Study Grp.*, Inc., 438 U.S. 59, 72, 75 n. 20, 98 S.Ct. 2620, 57 L.Ed.2d 595, 1978).

It is clear that the current lack of oversight by the State over parties causes injury to the candidate when a candidate is blocked ballot access by fraud through a party and the State has no way no mediate such fraud in the electoral process. Further other circuits have specified, that restrictions on petitions causes injury by depriving people of their choice of advocate (*Nader v. Blackwell*, 545 F.3d 459, 472, 6th Cir. 2008; *Nader v. Brewer*, 531 F.3d 1028, 1035, 9th Cir. 2008; *Krislov v. Rednour*, 226 F.3d 851, 857-58, 7th Cir. 2000; *Lerman v. Bd. of Elections*, 232 F.3d 135, 142-143, 2d Cir. 2000). Clearly not being able to have a ballot access to a candidate who spent more than a year and a half campaigning for said seat shows injury to the candidate and the injury is redressable by the relief requested.

## INTRODUCTION

The First Amendment places a premium on political speech, especially speech about elections for public office. Further, protecting the Constitution and 14th Amendment due process is an irrevocable duty. Virginia law provides requirements for candidate ballot access and even states that any candidate whom becomes candidate through fraud must be set aside,   yet no Virginia law specifically allows the Virginia Department of Elections to make parties adhere to the Virginia election laws. Virginia election law requires that candidates for the Federal US House of Representatives obtain 1,000 signatures from registered voters which are then submitted to the Congressional District Party Chair along with a fee of $3,480 submitted to the Virginia Department of Elections (Code 24.2-506).  Currently for US House Congressional races a Party Congressional Chair takes ballot petition signatures and according to the party plan in the Republican

Party of Virginia, this individual can be the only determining individual in whether the signatures are accepted or not and they don't have to give a reason for not accepting the petition signatures and there is no appeals process in the party. This is a clear 14th Amendment Due Process violation. The following occurred:

1.    Kimberly Lowe a candidate for Virginia's 9th Congressional District's ballot petition signatures were denied with no due process from the Republican Party of Virginia.

2.    On April 7th, 2022 Kimberly Lowe submitted around 1,400 petition signatures to Adam Tolbert, Republican Party of Virginia 9th District Congressional Chair, along with other required forms under the Virginia Department of Elections.

3.    On April 12th, 2022, Adam Tolbert sent a letter stating the petitions signatures were denied. While several reasons were listed, those petition signatures were still valid under Virginia election law and over 500 petition signatures were discarded without cause or explanation (see Exhibit 1).

4.    On April 12, 2022, immediately upon sending Kimberly Lowe a letter stating the petition signatures were not going to be certified/accepted, the 9th District Congressional Chair, Adam Tolbert, deemed Morgan Griffith as the Republican Party nominee and posted that information on the 9th District GOP page and other Facebook pages followed with the same information.

5.    The Republican Party of Virginia has no appeals process and no due process. Kimberly Lowe was unable to obtain the ballot petition signatures back or a reason for over 500 signatures being denied (see Exhibit 2).

6.  The 9th District Congressional Chair, Adam Tolbert, did not follow Virginia election law in the petition signatures which were denied (not including the 500 signatures which were discarded for no reason at all), specifically the following:

a.  According to the 9th District Republican Chair eight sheets included an improper notarial statement which is no fault of the candidate but rather a clerical error on behalf of the notary, be accepted and pursuant to 1VAC20-30B, the following did occur which does not render the pages invalid as this information was all present including

    i.  The circulator signed the petition they circulated in the presence of a notary.

    ii.  The notary affixed a reproducible seal.

    iii.  The notary included their registration number and commission expiration date.

    iv.  Thus all requirements were met so those petition signatures cannot be negated under Virginia law. Having these 70 valid signatures gives a petition signature total of 959 according to Adam Tolbert (see Exhibit 1: letter from Adam Tolbert).

b.  Eleven sheets were not accepted for means in which they were double sided:

That the Virginia law does not state a manner in which sheets must be double sided albeit if they are glued, taped, or adhered in some type of fashion as there is no specific Virginia code listing stating how a page is to be double sided. Pursuant to 1VAC20-30B1, "The following omissions are always material and any

petition containing such omissions shall be rendered invalid if 1. "the petition submitted is not the double-sided document, or a double-sided copy thereof.". The submitted forms were double sided and in no written fashion does it state how the forms must be double sided.

c.      That a large number of petition signatures were simply discarded with no explanation not allowing the candidate any due process under the 14th Amendment.

7.      That copies of the petition signatures submitted have been evaluated by an independent party and have been found to exceed the required number of petition signatures required under the law, thus the candidate met all requirements under the law to have ballot access on the Republican ticket, but is being denied ballot access by the party chair.

8.      It is the State of Virginia that gives ballot access to the party, not the other way around, yet in times of fraud or not following Virginia election law, there is no recourse.

## VIRGINIA LAW

Virginia law is clear that when fraud is involved, the candidate nominated via fraud must be set aside:

Virginia State law states under 24.2-537 that Procedure when nominee by default nomination is set aside prior to primary such that "B. If the party committee determines that the party's nominee shall be elected at the scheduled primary, any person desiring to become candidate for nomination by the party at that primary who is otherwise qualified make a declaration of and petition for his candidacy with the proper chairman

of his party committee [AND] **No person whose nomination has been set aside for fraud knowingly participated in by the candidate, or other person who knowingly participated in such fraud, shall be deemed qualified.** The declaration and petition shall comply in every respect with the requirements established generally for such declarations and petitions in this article, except that the declaration and petition shall be filed at least 35 days before the day on which the primary is to be held", and further **"No party shall nominate any person whose nomination has been set aside for fraud** knowingly participated in by the candidate, or **any other person who knowingly participated in such fraud"**.

### Precedences, Case Law, and Constitutionality

In evaluating ballot access, courts must "be vigilant...to guard against undue hinderances to political conversations and the exchange of ideas." *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 192 (1999). Preventing ballot access while not having an avenue to enforce Virginia law and the 1st and 14th Amendment can be compared to other hinderances to ballot access which were removed time and time again through litigation and court opinions. For example, the Supreme Court has twice considered statutes that restrict who may circulate petitions in support of a ballot measure, and has twice invalidated the restrictions. In *Meyer v. Grant,* 486 U.S. 414, 1988, when the Court struck down on Colorado's prohibition of paid petition signatures, and holding that the restriction was a "limitation on political expression subject to exacting scrutiny; and at 486 U.S. at 420, the Court found that the state had failed to justify the burden on advocates free speech rights. In *Buckley,* the Court invalidated a

requirement that petition circulators be registered voters on the state, holding that the "requirement cuts down the number of message carriers in the ballot-access arena without compelling cause" (525 U.S. at 197). Further, while the candidate obtained more than the required number of petition signatures under Virginia law, in other cases it's been found that having to obtain a certain number of petition signatures is a violation of a First Amendment right (*Norman v. Reed*, 502 U.S. 279, 1972).

Not allowing due process of petition signatures and simply discarding petition signatures through fraud cancels a broad range of political options and squelches a broad range of political speech. In many cases it was clear that even limiting residency requirements for circulators obtaining petition signatures squashes free speech, thus it is an extreme violation of free speech when a party can simply discard the signatures of individual voters without cause (see *Yes on Term Limits v. Savage*, 550 F. 3d 1023, 10th Cir. 2008; *Chandler v. City of Arvada*, Colorado, 292 F. 3d 1226; *Nader v. Blackwell*, 545 F.3d 459, 6th Cir. 2008, *Nader v. Brewer*, 531 F.3d 1029, 9th Cir. 2008, *Daien v. Ysursa*, 711 F.Supp.2d 1215, D. Idaho 2010; *Krislow v. Rednour*, 226 F. 3d 851. 7th Cir. 2000, *Lerman v. Board of Elections*, 232 F. 3d 135, 2nd Cir. 2000, *Lux v. Judd*, 651 F.3d 396 4th Cir. 2011, *Initiative and Referendum Institute v. Jaeger*, 241 F.3d 614, 8th Cir. 2001.)

*In Perry, Gingrich, Hunstman, Santorum v. State Board of Elections*, in an *Amicus Curiae* Brief presented to the Virginia Eastern District Federal Court by the ACLU, it was found that putting a residency requirement on petition circulators imposed a serious burden on political discourse and in other cases as cited above, the state has failed to

show that the residency requirement is narrowly tailored to serve a compelling government interest; THUS, if THIS COURT has previously ruled that restricting ballot petition circulator requirements is a violation of free speech, then surely having petition signatures from registered voters simply discarded is completely squashing the first amendment rights of voters, thoughts on political discourse, and the right of free association under the First Amendment, and further squashes the rights of a voter under Title 52.

Denying ballot access to a candidate when a party is not following Virginia election law or due process goes against Title 52 Section 10101, Voting Rights, and Section 10102, Interference with Freedom of Elections. Under Title 52 2B, No person acting under color of law shall deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act of voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election. Clearly a voter's right to choose a candidate or vote for a candidate has been denied when a candidate is not allowed ballot access because a Party commits fraud and does not set aside a candidate when fraud has occurred through fraudulent party action. This is a clear deprivation of voting rights.

## CONSTITUTIONALITY AND LEVEL OF SCRUTINY

In evaluating the constitutionality of Election law, "the rigorousness of [the court's] inquiry...depends upon the extent in which a challenged regulation burdens First and Fourteenth Amendment Rights (*Burdick v. Takushi*, 504 U.S. 428, 434, 1992). When

Constitutional rights "are subjected to 'severe' restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance" (Id.). "But when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions" (Id.). Here the provision at issue undoubtedly places serious burdens on the First Amendment rights of the Plaintiff and that of the voters/signers of the petition. The severity of these burdens requires the Court to evaluate the regulation using scrutiny. The circulation of ballot petition signatures have been found to be protected free speech under the First Amendment (*Meyer*, 486 U.S. at 421-22, 108 S.Ct. 1886) such that "the circulation of a petition involves the type of interactive communication concerning political exchange that is appropriately described as 'core political speech' (*Buckley v. Am. Constitutional Law Found.*, Inc., 525 U.S. 182, 186-7, 119 S.Ct. 636, 142 L.Ed.2d 599, 1999; Lux v. Judd, 842 F.Supp.2d 895, 900-02, E.D.Va. 2012.). Thus by simply discarding petition signatures, first Amendment rights have been trampled and violated.

Regulations which impose severe burdens on individual freedoms are subject to strict scrutiny, whereas regulations which impose lesser burdens are subject to less stringent review (*Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358, 117 S.Ct. 1364, 137 L.Ed.2d 589, 1997; *Burdick. v. Takushi*, 504 U.S. 428, 434, 112 St.Ct. 2059, 119 L.Ed.2d 245, 1992). The Supreme Court's decision in *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed. 2d 599, 1999, is instructive and guides the Court's analysis in the instant matter. In B*uckley*, the Supreme Court had

found that even regulating the petition circulator "cuts down the number of message carriers in the ballot-access arena without compelling cause" (Id. at 197, 119 S.Ct. 636), thus by simply discarding petition signatures it drowned the voice of the voters. Other cases have shown that burdens to ballot access implicate First Amendment rights and are subject to strict scrutiny (*Nader v. Brewer*, 531 F.3d 1028, 1036; *Blackwell*, 545 F.3d 459; *Yes on Term Limits*, 550 F.3d 1023; *Krislov*, 226 F.3d 851; *Citizens in Charge v. Gale*, 810 F.Supp.2d 916, D.Neb.2011; *Daien*, 711 F.Supp.2d 1215); and in *Lux v. Judd*, the Court held that just a residency requirement to obtain petition signatures involved core political speech protected by First Amendment and was therefore subject to strict scrutiny (842, F.Supp 2d at 900-02). In *Meyer*, the Supreme Court invalidated other ballot requiring restrictions stating that certain restrictions to ballot access were an undue restriction on First Amendment Freedom of Speech (486 U.S. 414, 108 S.Ct. 1886, 1988).

In *Meyer*, the Court explained that the circulation of an initiative petition involved "the liberty to discuss publicly and truthfully  all matters of public concern" at the core of the First Amendment (486 U.S. at 414). Such discussion is inherent in the petition process:

> Although a petition circulator may not have to persuade potential signatories that a particular proposal should prevail to capture their signatures, he or she will at least have to persuade them that the matter is one deserving of the public scrutiny and debate that would attend its consideration by the whole electorate. This will in almost every case involve an explanation of the nature of the proposal and why its advocates support it (486 U.S. at 421).

Similarly, circulating a petition to put a candidate on the ballot requires circulators to explain and answer questions about a candidate's positions, and to persuade signatories that the candidate's ideas are serious enough to warrant his or her

appearance on the state ballot. For candidates, therefore, the petition process is a vital means for conveying their message to voters. When the state regulations squash the voice of voters and the State does not have a means to supersede a party decision to ballot access when the party doesn't follow Virginia election law or Constitutional rights, it then undermines the candidate speech such that '[t]he First Amendment protects [a candidate's] right not only to advocate their cause but also to select what they believe to be the most effective means for so doing" (Id. 424) and by making an invitation to sign the petition a throughly futile act, it does prevent some highly valuable speech from having real effect, robbed of the incentive of possibly obtaining a valid signature (Krislov, 226 F.3d at 861 n.5). The restriction further "completely precludes [a candidate] from participating in the single most critical pat of...a candidacy...that of obtaining sufficient nominating signatures to appear on the [Virginia] ballot" (Daien, 711 F.Supp.2d at 1224).

Thus not only is the candidate burdened by Virginia's restriction, those who would receive the information are burdened as well such that "[T]he Constitution protects the rights to receive information and ideas" (Stanley v. Georgia, 394, U.S. 557, 1969) and "This right is an inherent corollary of the rights of free speech that are explicitly guaranteed by the Constitution" (Bd. of Educ., Island Trees Union Free School Dist. No. 26 v. Pico, 457 U.S. 853, 867 (1982). By simply discarding petition signatures with no State oversight over the party, this restriction "restricts the speech available to [Virginians], who benefit from the free exchange of ideas and political dialogue that comes from petition circulation" (Daien, 711 F.Supp.2d at 1231), and "[o]fcourse, the

restriction also affects the rights of...those who might hear the message" (*Krislov*, 226 F. 3d at 859 n.3).

In addition to depriving Virginia residents of speech, the restriction burdens voters' First Amendment rights by limiting their choice on a party primary ballot, thus voters are precluded from voting for those candidates who are banned from the ballot simply because one individual in a party may decide whether petition signatures are accepted or not while not even following Virginia law or allowing for due process. "By limiting the choices available to voters, the State impairs the voters' ability to express their political preferences (*Illinois State Board of Elections*, 440 U.S. at 184.). Virginia Republican voters have a right to have a say in who the party's nominee will be, not one individual in the party who does not follow Virginia election law or the U.S. Constitution.

"Representative democracy in any populous unit of governance is unimaginable without the ability of citizens to band together in promoting among the electorate candidates who espouse their political views" (*California Democratic Party v. Jones*, 530 U.S. 567, 574, 2000), thus "the right of individuals to associate for the advancement of political beliefs" is "fundamental" (*Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 184, 1979). Moreover, the choice of a party nominee is a key element of a party's right to political association:

> [The nomination] process often determines the party's positions on the most significant policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning over the party's views (*Jones*, 530 U.S. at 575).

Thus, the Supreme Court has recognized "the special place for First Amendment reserves for, and the special protection it accords, the process by which a political party selects a standard bearer who best represents the party's ideologies and preferences " (Id. at 575). Just as the restriction burdens voters' First Amendment right to cast an effective vote by limiting the choice of candidates, it burdens political parties by limiting their choice of standard bearers. The First Amendment places a premium on political speech, particularly speech about political change. The drafters fashioned the First Amendment "to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people" (*Krislov*, 226 F.3d at 858; *Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1 L.Ed. 2d, 1498/1957). By not allowing a method of relief when a party commits fraud to keep a candidate from the ballot, the Board deprives voters as a means to engage in core political speech and reduces the quantity of speech available to its residents (*Perry v. Judd*, 840 F.Supp. 2d 945, 958, E.D. Va. 2012). This deprivation directly infringes upon the Constitutional rights of of candidates, voters, petition circulators, and political parties and is subject to the most exacting *scrutiny* by this court, and further there has been clear injury to the candidate, Kimberly Lowe.

## **STRICT SCRUTINY INTEREST**

Because the burden imposes a severe burden on First Amendment rights, the Court must determine if it is narrowly tailored to serve a compelling government interest. Just as residency requirements for petitions signatures have found to be restrictive and overturned time and time again, restricting the voice of voters with no due process

clearly falls in a category which gives THIS COURT jurisdiction to overturn any restrictions which squash 1st Amendment rights and 14th Amendment due process.

A.  VIRGINIA'S COMPELLING STATE INTEREST

Applying a traditional strict scrutiny analysis, the Board and THIS COURT carries a heavy burden in justifying allowing a party to not follow Virginia election law and allowing a party to commit fraud with no State oversight. It must show not only that it achieves a compelling state interest, but also that it is no broader in scope than necessary to achieve that purpose (*Timmons*, 520 U.S. at 359, 117 S.Ct. 1364). In the context of the First Amendment, the Court must "be vigilent...to guard against undue hinderances of political conversations and the exchange of ideas" (*Buckley*, 525 U.S. at 192, 119 S.Ct. 636; quoting *Meyer* 486 U.S. at 421, 108 S.Ct. 1886). It is well established that states have a compelling interest in protecting the validity of their electoral process (*Doe v. Reed,* U.S.—, 130 S.Ct. 2811, 2819, 177 L.Ed.2d 493, 2010; *Purcell v. Gonzalez,* 549, U.S. 1, 4, 127 S.Ct. 5, 166 L.Ed.2 1, 2006).

B.  NARROWLY TAILORED

Despite the Commonwealth's compelling interest, the lack of party oversight in the electoral process is unconstitutional and the restriction is not narrowly tailored. The Commonwealth and THIS COURT must show that the restriction is no broader in scope or burdensome than necessary to achieve its purpose (*Brewer,* 531 F.3d at 1037; *Krislov,* 226 F.3d at 863). In other instances the Board initially refused to allow out of resident petition circulators arguing that fraud could take place yet here we are with fraud having occurred and no remedy for the Board to ensure electoral integrity.

## RELIEF REQUESTED

Upholding the Constitution and the integrity of our elections is one of the foundations of America. Not having a Virginia code that specifically allows the Department of Elections to force a party to follow Virginia election laws is a restriction upon the voter, the candidate, and the party while violating both the 1st and 14th Amendment. It is requested that the Virginia Department of Elections supersede the party, that Kimberly Lowe be given ballot access on the Republican ticket after having satisfied all Virginia election laws to obtain ballot access on the Republican ticket, and that under Virginia Code 24.2-537 the nominee (Morgan Griffith), nominated via fraud be removed from the ballot, and Kimberly Lowe be party nominee with the election to take place in November. As such, the outcome of potential avenues of relief that can be dictated to the Virginia Department of Elections for this and future cases:

a.    Allow the Department of Elections to also certify candidate petition signatures to ensure fraud does not take place in a party.

b.    Give the Department of Elections jurisdiction to make sure parties are following Virginia election law (in this case of fraud, the party nominee must lose all ballot access under Virginia code).

c.    Allow for an appeals process from parties to the Department of Elections so when parties commit fraud there is an avenue of relief.


It is further requested from THIS COURT, that THIS COURT prevent any delays or forthcoming extensions such that ballot access is swiftly granted as time is of the essence.

## CERTIFICATE OF SERVICE

I hereby certify that the following Civil Complaint was hand delivered to the Eastern District Federal Court Clerk on this 18th day of April 2022 and the Attorney General of the United States, the United States Attorney General for the Eastern District of Virginia, and Robert Brink, Member of the State Board of Elections were mailed the summons and complaint via certified mail.



_____

Kimberly Lowe
4069 Postal Drive #20567
Roanoke, VA 24018
kim4va@kimberlylowe.com

Attorney General of the United States
Main Justice Building
10th and Constitution Ave., N.W.
Washington D.C. 20530

United States Attorney ~~General~~ *Kirk* for the Eastern District of Virginia
Suntrust Building
919 East Main Street, Suite 1900
Richmond, VA 23219

Robert Brink, Member of the State Board of Elections
Washington Building, First Floor
1100 Bank Street
Richmond, VA 23219

United States Court Eastern District
701 East Broad St.
Richmond, VA 23219

## CERTIFICATION

I declare under penalty of perjury that:

(1)  No attorney has prepared, or assisted in the preparation of this document.



_____

Kimberly Lowe, Pro-Se Litigator

Executed on April 18, 2022