IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KIMBERLY LOWE,
        Plaintiff,

v.                                      Civil Action No. 3:22-cv-263

ROBERT BRINK,
        Defendant.

## **MEMORANDUM OPINION**

On April 12, 2022, the Chairman of the Ninth Congressional District Virginia Republican Committee ("the Chairman" or "Committee") refused to certify Kimberly Lowe's nomination petition for candidacy in the June 21, 2022, Republican primary election. The Committee Chairman rejected Lowe's qualified voter forms, finding that the forms did not include the 1,000 valid signatures required by Virginia law.[1] Lowe attempted to appeal the Committee Chairman's decision with the Republican Party to no avail.

Lowe, proceeding *pro se*, sues Robert Brink, in his official capacity as Chairman of the Virginia State Board of Elections ("the Board"), for "allowing [the Republican] party to not follow Virginia election law"[2] and thus violating her First and Fourteenth Amendment rights. (*Id.* at 15.)

---

[1] "A candidate in a primary election for Member of the United States House of Representatives must submit to the applicable party chairman a declaration of candidacy, receipt for payment of the primary filing fee to the Virginia Department of Elections, and petitions of qualified voters bearing the signatures of at least 1,000 voters eligible to vote for the office." (ECF No. 1-1, at 2.)

[2] Lowe does not challenge the signature requirement itself or any other specific statute. Instead, she argues that the Republican Party denied her due process, (see ECF No. 1, at 4), and that, by failing to override the Chairman's rejection of her petition, the Board violated her First Amendment right to political speech and Fourteenth Amendment Right to due process.

    Put plainly, Lowe challenges the *absence* of a law allowing the Board to review and overturn the Chairman's decision.

Construed generously, Lowe also claims that the Board has violated her rights under two provisions of the Voting Rights Act of 1965.[3] Brink moves to dismiss for lack of subject matter jurisdiction because Eleventh Amendment immunity bars Lowe's claims. Brink also argues that Lowe fails to state either a constitutional claim under the First or Fourteenth Amendments or a statutory claim under the Voting Rights Act of 1965.

Assuming the truth of the factual allegations in the complaint and drawing all inferences in favor of Lowe, the Court concludes that Lowe does not have standing because the Board did not cause her alleged injury. But even if Lowe does have standing, the Court also finds that Eleventh Amendment immunity bars Lowe's claims because Brink is an agent of the state, and the *Ex parte Young* exception does not apply. Additionally, Lowe fails to satisfy the federal pleading standard because she alleges no facts which suggest that the Board had a duty to override the Committee Chairman or ensure Lowe's access to the Republican ballot.[4]

## I. BACKGROUND.

### A. Facts Alleged in the Pro Se Complaint

On April 7, 2022, Lowe submitted "around 1,400" petition signatures to the Ninth Congressional District Committee Chairman to get on the ballot for the Republican Party's Ninth Congressional District primary. (ECF No. 1, at 4.) The Committee Chairman responded by letter on April 12, 2022, explaining that Lowe failed to meet the 1,000-signature requirement for inclusion on the ballot. (*Id.*) The letter said that Lowe had only submitted 889 proper signatures

---

[3] Lowe cites to 52 U.S.C. §§ 10101–02. (*Id.* at 9.)

[4] Lowe's complaint is also peppered with broad allegations of "fraud" on the part of the current Republic nominee, Morgan Griffith, and the Republican party. These allegations are conclusory; Lowe provides no facts indicating that any fraud took place. Further, she does not allege that Brink or any other member of the Board participated in or were made aware of the "fraud." For that reason, Lowe's conclusory fraud claims lack merit. *See also* Fed. R. Civ. P. 9.

because eleven petition signature forms did not comply with the double-sided form requirement under 1 Va. Admin. Code § 20-50-20, and eight of the forms included a notarial error. (ECF No. 1-1, at 2.) The eleven forms that did not comply with the double-sided requirement were single-sided forms that Lowe had "taped or glued" together. (*Id.*) The Chairman explained that even including the signatures on the forms with the notarial error, Lowe fell forty-one signatures short of the requirement. (*Id.* at 2.)

Because the Committee Chairman did not accept Lowe's candidacy, it nominated another candidate for the general election. (ECF No. 1, at 4.) Lowe claims that an independent party has verified that she met the 1,000-signature requirement,[5] (*id.* at 6), but the Committee has no formal appeals process[6]—the word of the Chairman is final. (ECF No. 1-1, at 4.)

### B. Procedural Posture

On April 18, 2022, Lowe sued Brink in his official capacity as a member of the Virginia State Board of Elections.[7] (ECF No. 1, at 1.) Throughout the complaint, Lowe asserts that her signatures "were denied with no due process from **the Republican Party of Virginia**," **the party**

---

[5] Lowe does not provide any proof of this external certification or explain who the independent party is.

[6] Lowe attached an email exchange with Rich Anderson, Chairman of the Republican Party of Virginia, to her complaint. (ECF No. 1-1, at 4.) In the email, Anderson explained that there is no process for appealing the Chairman's final certification of candidates to the District Chair of the Virginia Department of Elections. *See also* 1 Va. Admin. Code § 20-50-30(A) (stating that a "candidate for office, *other than a party nominee*, may appeal a determination that the candidate has failed to provide the required number of valid petition signatures necessary to qualify to appear on the ballot" (emphasis added)).

[7] Lowe mentions the Department of Elections throughout the complaint, but she sues the Chairman of the Board of Elections. "The State Board of Elections and the Department of Elections are separate entities under Virginia law." (ECF No. 6, at 4 (citing Va. Code Ann. § 24.2-102(A), (B)).) Because the Department of Elections oversees elections through the Board, the Court will construe Lowe's references to the Department of Elections as addressing the Board.

chair "did not follow Virginia election law," and that she was "denied ballot access by **the party chair**."[8]  (ECF No. 1, at 4, 6 (emphasis added).)  Lowe does not allege any facts regarding the conduct of Brink or the Board.  Rather, Lowe asserts that the Board has a general duty to oversee and review the Republic Party's nomination process.  "[T]he Board . . . carries a heavy burden in justifying allowing a party to not follow Virginia election law and allowing a party to commit fraud with no State oversight."  (ECF No. 1, at 15; *see also id.* ("[T]he lack of party oversight. . . is unconstitutional.").)  Because the Board breached that duty by failing to review the party Chairman's decision with respect to Lowe's candidacy, it violated the First and Fourteenth Amendments and the Voting Rights Act of 1965.  (*Id.*)  Accordingly, Lowe asks the Court to grant the Board the power to place her on the Republican ticket for the general election.[9]  (*Id.*)

On May 11, 2022, Brink filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (ECF No. 6, at 1.)  Brink argues that the Court lacks subject matter jurisdiction because the Eleventh Amendment grants sovereign immunity to him as the Chairman of the Board.  (*Id.*)  Brink further argues that Lowe has failed to state a claim upon which relief can be granted because (1) he plays no role in how the Committee nominates a candidate; (2) the First Amendment bars the Board from interfering in the Committee Chairman's decision; and (3) Lowe fails to allege any facts supporting a claim under the Voting Rights Act of 1965.

---

[8] "Prior to filing this action against Brink, Lowe filed a Petition for Writ of Mandamus against [the Committee Chairman] and the Republican Party of Virginia in the Supreme Court of Virginia. *See Lowe v. Tolbert*, No. 220226 (Va. filed Apr. 14, 2022)."  (ECF No. 6, at 3 n.2.)  The Supreme Court refused Lowe's Petition on June 17, 2022.

[9] Here again, Lowe's prayer for relief refers only to the Department of Elections, not the Board.  (*See* ECF No. 1, at 16 (asking the Court to "[a]llow the Department of Elections to also certify candidate petition signatures to ensure fraud does not take place in a party"; "[g]ive the Department of Elections jurisdiction to make sure parties are following Virginia election law"; and "[a]llow for an appeals process from parties to the Department of Elections").)

(*Id.*)

Lowe's deadline to file a response opposing the motion to dismiss was June 1, 2022.[10]  She failed to respond.

### C. Statutory Framework

The Board is responsible for "mak[ing] rules and regulations and issu[ing] instructions and provid[ing] information consistent with the election laws to the electoral boards and registrars to promote the proper administration of election laws." Va. Code Ann. § 24.2-103(A).  While political parties have the power to "make [their] own rules and regulations" and "provide for the nomination of [their] candidates," *id.* § 24.2-508, a party must comply with several laws and regulations if it decides to nominate a candidate by primary, *id.* § 24.2-511.  For example, candidates for the United States House of Representatives must file their declaration of candidacy and signature petitions using forms prescribed by the Board confirming that they have met the 1,000-signature requirement. *Id.* §§ 24.2-521(A), (B)(2) (2020).  Candidates must also use the double-sided petition forms that the Board provides or double-sided copies thereof. 1 Va. Admin. Code § 20-50-20.

Candidates for *party* primaries file their declaration and petitions with their respective committee chairman. Va. Code Ann. § 24.2-522(B).  It is then the duty of the committee chairman to "certify that a review of the filed candidate petitions found the required minimum number of signatures of qualified voters for [an] office [has] been met." Va. Code Ann. § 24.2-527(A).  The Board oversees the process by which *independent* candidates get on the general election ballot and

---

[10] Brink included the requisite *Roseboro* Notice in the motion to dismiss informing Lowe that, as a *pro se* plaintiff, she was entitled to file a response to the motion to dismiss within twenty-one days of the date on which the motion was filed. *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

certifies their petition signatures. *Id.* § 24.2-506. The Board also hears appeals from independent candidates who fail to meet the signature requirement. *Id.* § 24.2-506(C). But the Board lacks any statutory authority to review a party's rejection of a candidate. *Id.*

## II. DISCUSSION

For the following reasons, the Court will grant Brink's motion and dismiss Lowe's complaint. First, Lowe lacks standing. Second, Eleventh Amendment immunity protects Brink because he is an agent of the state. As discussed below, the Court finds that the *Ex parte Young* exception does not apply because Brink is not responsible for enforcing the signature requirement for candidates from political parties. Finally, Lowe does not satisfy the federal pleading standard because she fails to allege any facts supporting her claims against the Board.

### A. Standing

While Brink did not raise the issue of constitutional standing, the Court "must assure [itself] of subject matter jurisdiction and may address standing sua sponte." *Buscemi v. Bell*, 964 F.3d 252, 258 (4th Cir. 2020). Lowe addresses standing in her complaint, but she only presents arguments concerning the injury-in-fact requirement. (ECF No. 1, at 2–3.) She does not address causality or redressability, the remaining standing requirements. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The Court finds that Lowe does not satisfy the causality requirement because the Committee Chairman rather than the Board caused her injury. Furthermore, Lowe fails to satisfy the redressability requirement because the Court likely cannot grant the relief she seeks. Even if the Court could grant the relief Lowe seeks and allow the Board to consider an appeal of the Committee Chairman's decision, nothing guarantees redress of her injury. Indeed, because Lowe's petition contained a fatal procedural defect, the Board probably would reach the same conclusion the Committee Chairman did and reject her petition.

6

*1. Legal Standard*

Constitutional standing requires (1) an injury in fact, (2) a causal connection between the injury and defendant's conduct, and (3) a likelihood that a favorable outcome for the plaintiff would redress the injury. *Lujan*, 504 U.S. at 560–61. To satisfy the causality requirement, a plaintiff must show that the conduct of the defendant led to the injury and not the conduct of some third party. *Id.* at 560. To show redressability, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). Additionally, the plaintiff must demonstrate that the court has the power to grant the relief requested. *Buscemi*, 964 F.3d at 259 (citing *K.C. ex rel. Africa H. v. Shipman*, 716 F.3d 107, 116–17 (4th Cir. 2013)).

*2. Injury in Fact*

Here, Lowe satisfies the injury in fact requirement because the Committee Chairman excluded her from the Ninth District's primary. *See Constitution Party of Va. v. Va. State Bd. of Elections*, 472 F. Supp. 3d 285, 295 (E.D. Va. 2020) (finding candidate plaintiffs' inability to get on the general election ballot was a cognizable injury).[11]

*3. Causality*

Lowe fails to satisfy the causality requirement. Because the Committee Chairman decided to keep Lowe off the primary ballot,[12] she cannot attribute her injury to the Board. (ECF No. 1, at

---

[11] While the plaintiffs in *Constitution Party* were third-party candidates and Lowe seeks candidacy for a major party, that difference only speaks to who caused the injury—the Board rather than a major party. *See* 472 F. Supp. 3d at 288. Thus, this difference is immaterial for the injury in fact requirement.

[12] Lowe concedes that her signatures "were denied with no due process from the Republican Party of Virginia" and that she was "denied ballot access by the party chair." (ECF No. 1, at 4, 6.)

4.)  In *Marshall v. Meadows*, Republican party members sued the Board for violating their First Amendment rights through operation of Virginia's Open Primary Law.  105 F.3d 904, 905 (4th Cir. 1997).  The Open Primary Law allowed any qualified voter to participate in a party's primary. Va. Code Ann. § 24.2-530.  After incumbent United States Senator John Warner opted for a primary election pursuant to the Incumbent Protection Act, the Republican Party affirmed Warner's choice and decided to hold an open primary.  Because "the alleged injury [wa]s caused by a voluntary choice made by the Virginia Republican Party," the court found that the plaintiffs did not establish causation.  *Marshall*, 105 F.3d at 906.

Here, although the Board is responsible for creating standards for petition signature forms, *see* 1 Va. Admin. Code § 20-50-20, the Committee Chairman is responsible for overseeing the party's nomination process, *see* Va. Code Ann. § 24.2-508, and certifying that candidates have satisfied the signature petition requirement, *see id.* § 24.2-527(A).  Thus, the unilateral conduct of the Committee Chairman caused Lowe's injury.  The Committee Chairman merely cited the Board's signature petition requirements in its letter to Lowe.[13]  (ECF No. 1-1, at 2.)

Construed generously, Lowe argues that the Board's failure to regulate the Republican Party caused her injury.  (ECF No. 1, at 3.)  For example, Lowe incorrectly claims that the Board had a duty to reject the Committee's nominee pursuant to Va. Code Ann. § 24.2-537 because of "fraud."  (ECF No. 1, at 6–7.)  But that statute is not relevant to her claims because it only applies when a nominee by default either dies or withdraws.[14]  Nothing in the statute suggests that the

---

[13] Notably, Lowe does not challenge the validity of the signature petition form requirements.

[14] A. If any person who would have been nominated as the candidate of a political party . . . by reason of the fact that he was the only person who filed the required declaration of and petition for candidacy dies or withdraws . . . the appropriate

8

Board has either an affirmative duty or the authority to place an individual on a party's general election ticket against the party's will. *See id.* Even if the Committee Chairman erroneously rejected Lowe's candidacy, the injury is not fairly traceable to the Board because the Board lacks the power to regulate the Committee's conduct in this regard.[15] Because the Board was not responsible for Lowe's injury, Lowe fails the causality requirement for standing.

### 4. Redressability

Lowe also fails to satisfy the redressability requirement because the Court likely lacks the power to grant the relief she seeks. Lowe seeks to be included on the Republican ticket for the general election *as the only nominee* and asks the Court to grant the Board the power to make that happen.[16] This would require the Board to overturn the Committee Chairman's decision as to

---

committee of the political party shall determine the time and method of nominating its candidate . . .

B. . . . any person desiring to become a candidate for nomination by the party at that primary who is otherwise qualified may file a declaration of and petition for his candidacy . . . No person whose nomination has been set aside for fraud knowingly participated in by the candidate, or other person who knowingly participated in such fraud, shall be deemed qualified.

Va. Code Ann. § 24.2-537. Notably, even if the current nominee died, withdrew, or was otherwise removed, the Republican Party would still have to the authority to "determine the time and method of nominating its candidate." *Id.*

[15] Section 24.2-506(C) of the Virginia Code states that the Board will only handle appeals from independent candidates that submit an insufficient number of petition signatures, § 24.2-508 states that parties will control their own nomination process, and § 24.2-527(A) states that party committee chairmen will certify that candidates have met the signature requirement. When read together, the statutes suggest that the Virginia General Assembly has not authorized the power of the Board to review a political party's rejection of a candidate for lack of petition signatures.

[16] More precisely, Lowe asks the Court to allow the Board to certify petition signatures for major party candidates, to grant the Board "jurisdiction to make sure parties are following Virginia election law," and to allow the Board to hear appeals from major party candidates that fail to meet the signature requirement. (ECF No. 1, at 16.)

Lowe's petition, place Lowe on the ballot as the Republican nominee, and disqualify the existing nominee.[17] (*See* ECF No. 1, at 16 (asking that "the nominee (Morgan Griffith), nominated via fraud be removed from the ballot").)

Lowe's suit differs from cases in which the Court has found candidate plaintiffs to have standing to sue the Board to be included on a presidential primary ballot. *See Perry v. Judd*, 840 F. Supp. 2d 945, 955–56 (E.D. Va. 2012) (finding Republican candidates had standing to challenge Virginia's rules limiting who can circulate candidate petitions and requiring 10,000 signatures). *Lowe does not challenge the Board's signature requirements*; she argues that the party chair incorrectly applied the requirements to her. Thus, she asks the Board to use oversight powers that it does not have to overrule the party's decision and certify a party candidate that the party has rejected. Such an action from the Board would interfere with the party's internal operations and likely violate the Republican party's right of association.[18] Lowe fails to cite to any law authorizing this Court to fashion the broad remedies she requests. Because the Court cannot grant Lowe the relief she seeks, Lowe fails to satisfy the redressability requirement.

---

[17] Indeed, if inclusion on the general ballot were sufficient relief, then this suit would have been unnecessary because Lowe had until the Third Tuesday in June to submit the requisite signature petition forms to the Board as an independent candidate. *See* Va. Code Ann. § 24.2-507.

[18] As Lowe herself points out, "the choice of a party nominee is a key element of a party's right to political association." (ECF No. 1, at 13.)

> In no area is the political association's right to exclude more important than in the process of selecting its nominee. That process often determines the party's positions on the most significant public policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views.

*Cal. Democratic Party v. Jones*, 530 U.S. 567, 575 (2000); *see also Boston Correll v. Herring*, 212 F. Supp. 3d 584, 614 (E.D. Va. 2016) ("[W]here the State attempts to interfere with a political party's internal governance and operation, the party is entirely free to 'cancel out [the State's] effort.'" (alteration in original)).

Even if the Court could grant Lowe's requested relief, Lowe still has a redressability problem. Under redressability, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 41–42). Lowe asks the Court to allow the Board to review the Chairman's decision denying her petition. But nothing in the record indicates that such relief would likely yield a different result for Lowe's candidacy. To the contrary, Lowe's submission of glued or taped together forms clearly violates the plain language of the mandatory requirements of 1 Va. Admin Code § 20-50-20. Allowing a candidate to appear on the ballot who has not met minimum qualifications under Virginia law plainly undermines the integrity and fairness of the entire electoral process.

Because Lowe lacks standing, the Court will dismiss her complaint.

### B. Eleventh Amendment Immunity

Even if Lowe has standing, Eleventh Amendment immunity protects Brink from Lowe's claims because he is an agent of the state by virtue of his position as Chairman for the State Board of Elections. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

### 1. Legal Standard[19]

Under the Eleventh Amendment a state is immune from an action brought by an individual in federal court. U.S. Const. amend. XI; *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Eleventh Amendment immunity extends to "state agents and state instrumentalities." *Regents.*, 519 U.S. at 429. Under the *Ex parte Young* exception, however, "federal courts may exercise jurisdiction over claims against state officials if . . . (1) the violation for which relief is sought is an ongoing one,

---

[19] Because the Eleventh Amendment blocks the exercise of a court's jurisdiction, district courts within the Fourth Circuit address this issue under Rule 12(b)(1). *Riddick v. Watson*, 503 F. Supp. 3d 399, 411 n.8 (E.D. Va. 2020) (noting that the Fourth Circuit has not decided whether Eleventh Amendment claims should fall within 12(b)(1) or 12(b)(6)).

and (2) the relief sought is only prospective." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998) (citing *Ex parte Young*, 209 U.S. 123, 149–50 (1908)). "The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001). Furthermore, for the *Ex parte Young* exception to apply, a "special relation" must exist between the official and the challenged statute that makes the official responsible for enforcing the statute. 209 U.S. at 157.

### 2. *Analysis*

Brink argues that the Eleventh Amendment protects him because Lowe has sued him in his official capacity as the Chairman of the Board. (ECF No. 6, at 6.) Brink points out that courts within this district have recognized the Board as an "arm of the state for Eleventh Amendment purposes." *See Goldman v. Northam*, 566 F. Supp. 3d 490, 503 (E.D. Va. 2021). In *Goldman*, a *pro se* plaintiff sued members of the Board in their official capacities for, among other things, violating the Fourteenth Amendment's Equal Protection Clause. *Id.* at 495–96, 501, 505–07. Specifically, the plaintiff argued that the Board members improperly decided to proceed with the 2021 general election using outdated electoral districts. *Id.* The defendant Board members raised Eleventh Amendment immunity as state agents, but the court found that the *Ex parte Young* exception applied. *Id.* at 506–07. Although the Board did not draw the electoral districts, the court found that its members "bore some responsibility for 'perpetuation of the ballot access regime.'" *Id.* at 506 (quoting *Libertarian Party of Ky. v. Grimes*, 164 F. Supp. 3d 945, 950 (E.D. Ky. 2016), *aff'd*, 835 F.3d 570 (6th Cir. 2016)). Thus, the Board members possessed the necessary "special enforcement relationship" to the electoral process. *Id.* at 507.

For several reasons, *Goldman* does not govern this case. First, Lowe does not challenge

12

the Board's "enforcement of an allegedly unconstitutional state law." *Gilmore*, 252 F.3d at 330.

Accordingly, she fails to allege an ongoing violation for federal law. Second, while the underlying

controversy in *Goldman* concerned the defendants' affirmative decision to proceed with the 2021

general election using outdated electoral districts, *see Goldman*, 566 F. Supp. 3d. at 495, 506,

Lowe cites no affirmative action on the part of Brink or the Board. The Board's statutory duty to

regulate elections—including primaries—stops short of reviewing the Committee Chair's decision

to reject a candidate for lack of petition signatures. Unlike independent candidates, major political

party candidates may not appeal the rejection of their candidacy with the Board for lack of petition

signatures. *See supra* note 15. Thus, to construe the regulatory duty of the Board to include that

power runs counter to Virginia election law. As Lowe herself concedes, there is no Virginia law

that allows the Board to override the Committee's nomination or appeal the Committee

Chairman's decision to reject a candidate. (ECF No. 1, at 16.) Because Brink lacks the requisite

special relationship, the *Ex parte Young* exception does not apply. Thus, because Brink is an agent

of the state, he is protected by the Eleventh Amendment, and the Court will grant his motion to

dismiss.

### C. Failure to State a Claim

Even if Lowe has standing and Brink is not immune from suit, the Court would still dismiss

her claim because she fails to plausibly plead facts supporting a claim for relief. *See Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### 1. Legal Standard

To survive a 12(b)(6) motion to dismiss, a plaintiff must allege sufficient facts to show that

her claim is "plausible on its face." *Twombly*, 550 U.S. at 570. The Court applies a two-prong

test to determine whether a plaintiff has satisfied the pleading standard. *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009). First, the Court assumes all well-pleaded factual allegations are true and disregards any legal conclusions. *Id.* Second, the Court determines whether the well-pleaded factual allegations "permit the court to infer more than the mere possibility of misconduct." *Id.* "[W]hile the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the [plaintiff]'s advocate and develop . . . statutory and constitutional claims that the [plaintiff] failed to clearly raise on the face of his complaint." *Hamilton v. Collins*, No. 3:20cv540, 2022 WL 108410, at *1 (E.D. Va. 2022) (citing *Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring) and *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

### 2. *First and Fourteenth Amendment Claims*

Lowe claims that the Board violated her First and Fourteenth Amendment rights by allowing the Republican party to deny her ballot access. (ECF No. 1, at 7.) But Lowe offers no more than bare legal conclusions against the Board. (*See, e.g.*, ECF No. 1, at 8 ("Not allowing due process of petition signatures and simply discarding petition signatures through fraud cancels a broad range of political options").) She does not allege any facts that suggest the Board played any role in excluding her from the Republican ticket, nor does she point to any law that permits the Board to review the Republic Party's rejection of her candidacy. The Board has a very narrow task with respect to a party's nomination process. The Board creates standards for petition signature forms, 1 Va. Admin. Code § 20-50-20, but candidates file their petitions with their respective committee chairman, Va. Code Ann. § 24.2-522(B). More to the point, a party's district committee chairman, not the Board, is responsible for certifying that the signature requirement has been met. *Id.* § 24.2-527(A). The Board may only hear appeals from independent candidates that failed to meet the signature requirement. *Id.* § 24.2-506(C). There is no appeals procedure

14

available for party candidates; rather, Virginia law grants political parties broad discretion in determining their nominees, *id.* § 24.2-508.

Lowe does not challenge the Board's rules, nor does she allege the Board acted contrary to its statutory duties described above.[20] Rather, she simply concludes that the Board's "lack of party oversight in the electoral process is unconstitutional." (ECF No. 1, at 15.) "But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). The Republican Party is a private organization, and no Virginia law suggests that the Board has the power to review the Committee Chairman's decision.

The Court declines to entertain Lowe's vague and conclusory claim that the Board failed to perform an action that it lacks any statutory authority to perform. Thus, the Court will grant the motion to dismiss Lowe's First and Fourteenth Amendment claims.

### 3. *Voting Rights Act Claims*

Lowe also mentions two sections of the Voting Rights Act in her complaint. She pleads a claim for neither. Section 10101 of title 52 of the United States Code guarantees voting rights for qualified voters regardless of "race, color, or previous condition of servitude" and prohibits intimidation, threats, and other methods of voter suppression. *See* 52 U.S.C. § 10101. Lowe alleges no facts to suggest that the Board improperly prevented her from voting under § 10101. *See id.* Conversely, 52 U.S.C. § 10102 prevents military personnel from interfering in elections. *Id.* § 10102. Lowe does not allege that a military officer took part in the rejection of her candidacy.

---

[20] As discussed in the standing section, Va. Code Ann. § 24.2-537, which Lowe relies on to argue the Board has a duty to reject certain candidates, is not applicable to Lowe's situation because it only applies when a nominee by default either dies or withdraws.

*See id.*  Because Lowe has failed to allege the requisite elements for her statutory claims, the Court will also grant the motion to dismiss Lowe's statutory claims.

### III.  **CONCLUSION**

Because Lowe lacks standing, the Eleventh amendment bars her claims against Brink, and Lowe's complaint fails to state a claim upon which relief can be granted, the Court will grant Brink's motion and dismiss Lowe's complaint in full.  (ECF No. 5.)

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

Date: 19 July 2022
Richmond, VA

_____/s/_____
John A. Gibney, Jr.
Senior United States District Judge

16